UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AUTO-OWNERS INSURANCE COMPANY,
a foreign corporation,

           Plaintiff,

-vs-                                                       Case No.  5:09-cv-64-Oc-10GRJ

BEVERLY HABBERT, individually, and as
Personal Representative of the Estate of
George Habbert, JOHN ROBERT
DISILVIO, ROCK SOLID FRAMING, INC.,

           Defendants.
_____

**O R D E R**

Plaintiff Auto-Owners Insurance Company ("Auto-Owners"), has filed a complaint seeking a declaratory judgment that a General Commercial Liability Policy it issued to Defendant Rock Solid Framing, Inc. ("Rock Solid") does not cover damages arising out of a January 28, 2008 car accident in Sumter County, Florida (Doc. 1).  The Defendants filed a counterclaim also seeking declaratory relief that the policy does cover damages from the car accident (Doc. 5).

This case is now before the Court on the Defendants' Motion for Summary Judgment on their counterclaim (Doc. 10), to which Auto-Owners has filed a response in opposition (Doc. 17).  The Parties agree that there are no material facts in dispute and that the sole issue in this case – the interpretation of a coverage provision in the insurance policy – is a question of law which can be resolved by summary judgment.

Upon a review of the case record and consideration of the Parties' motion papers, the Court concludes that the Defendants' motion is due to be denied and that judgment shall be entered in favor of Auto-Owners.

## Background and Undisputed Facts

Auto-Owners is an insurance company licensed to sell insurance in Florida, with its principal place of business in Lansing, Michigan. Defendant Beverly Habbert is a resident of Lady Lake, Florida, and the widow of George Habbert. She is also the personal representative of the Estate of George Habbert. Defendant Rock Solid is a Florida corporation with its principal place of business in Wildwood, Florida. Defendant John Robert Disilvio is a resident of Wildwood, Florida. At all relevant times, Dilsilvio was an employee of Rock Solid.

Auto-Owners issued to Rock Solid a Commercial General Liability Policy, policy number 78633766-07, for the period April 15, 2007 through April 15, 2008, in the amount of $1,000,000 (the "Policy"). Under the heading "Commercial General Liability Plus Endorsement," the Policy provided for coverage of bodily injury or property damage arising out of hired and/or non-owned vehicles as follows:

> **2. HIRED AUTO AND NON-OWNED AUTO LIABILITY COVERAGE**
>
> Coverage for "bodily injury" and "property damage" liability provided under **SECTION 1 COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is extended as follows under this item, but only if you do not have

>  any other insurance available to you which affords the same or similar coverage.
>
> **Coverage**
>
> We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto":
>
> a.   You do not own;
>
> b.   Which is not registered in your name; or
>
> c.   Which is not leased or rented to you for more than ninety consecutive days
>
> and which is used in your business

(Doc. 5, Ex. A, p. 10). In other words, motor vehicles that are owned by a Named Insured (in this case Rock Solid) are not included within the coverage provided by this endorsement.

On January 28, 2008, Defendant John Robert Disilvio was operating an automobile with vehicle identification number 1 GTHK23D46F200508 in Sumter County, Florida, in the area of County Road 475 and County Road 488. While conducting business on behalf of Rock Solid, Disilvio was involved in a car accident with George Habbert, who tragically died at the scene. Mr. Habbert was survived by his wife, Beverly Habbert.

At the time of the accident the Certificate of Title from the State of Florida listed the Registered Owner of the vehicle as "Rock Solid Framing, Inc. or John Robert Disilvio" (Doc.

13, Ex B). The vehicle and Disilvio individually were insured by Progressive Insurance Company. Disilvio is not a Named Insured under the Commercial General Liability Policy.

On August 13, 2008, Mrs. Habbert, in her role as personal representative of the Estate of George Habbert, issued a Time Limited Policy Limit Demand Letter to Auto-Owners in which she alleged that Disilvio's negligence caused the January 28, 2008 accident, and demanded coverage under the Policy in the full amount of $1,000,000. Auto-Owners responded that the Policy did not cover the accident because Disilvio was operating a vehicle owned by Rock Solid.

On December 31, 2008, Mrs. Habbert notified Auto-Owners that Disilvio and Rock Solid were considering entering into a $1,700,000 settlement with Mrs. Habbert in which Disilvio and Rock Solid would assign all rights and claims against Auto-Owners to Mrs. Habbert. Mrs. Habbert further notified Auto-Owners of her intent to file suit against Auto-Owners for improper denial of coverage. The assignment became effective on March 26, 2009 (Doc. 13, Ex. E).

In the meantime, Auto-Owners filed its declaratory judgment complaint in this Court on February 3, 2009.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c)(2), the entry of summary judgment is appropriate only when the Court is satisfied that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the materials on file and record evidence "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Celetex, 477 U.S. at 324. See also Fed. R. Civ. P. 56(e)(2). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

## Discussion

The Parties agree that Florida law applies to this diversity jurisdiction case. See Flintkote Co. v. Dravo Corp., 678 F. 2d 942, 945 (11th Cir. 1982). Under Florida law, if a provision in an insurance policy contract "is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy

5

is considered ambiguous." Garcia v. Federal Ins. Co., 969 So. 2d 288, 291 (Fla. 2007) (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). The determination of whether the relevant policy term is ambiguous is a question of law. Team Land Dev., Inc. v. Anzac Contractors, Inc., 811 So. 2d 698, 699-700 (Fla. 3d DCA 2002). See also Jones v. Utica Mut. Ins. Co., 463 So. 2d 1153, 1157 (Fla. 1985); Dahl-Eimers v. Mutual of Omaha Life Ins. Co., 986 F. 2d 1379, 1381 (11th Cir. 1993).

The Defendants first focus on Auto-Owner's use of the terms "own" and "or" in the "Commercial General Liability Plus Endorsement" section of the Policy concerning autos owned by a Named Insured. According to the Defendants, "own" could be interpreted both to mean sole ownership or ownership in the alternative, and "or" could be interpreted both in the alternative and the conjunctive. Because the Policy does not define these terms, and because the Policy does not expressly include or exclude autos owned in the alternative, the Defendants argue that the Policy creates an ambiguity, which must be interpreted to provide coverage. According to the Defendants, Auto-Owners, as the drafter of the Policy, could and should have anticipated that autos would be titled in alternative names and could have accounted for such circumstances in the Policy, and therefore the Court should not reward Auto-Owners for its silence on this issue by interpreting the Policy to avoid coverage.

Although Auto-Owners did not define the terms "own" and "or" in the Policy, this does not automatically render the terms ambiguous. "Under Florida law, insurance contracts are construed according to their plain meaning." Taurus Holdings, Inc. v. U.S. Fidelity & Guar.

Co., 913 So. 2d 528, 532 (Fla. 2005). General Accident Fire & Life Assurance Corp. v. Liberty Mutual Ins. Co., 260 So. 2d 249, 253 (Fla. 4th DCA 1972) ("[T]erms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical, and sensible interpretation consistent with the intent of the parties - not a strained, forced or unrealistic contruction."). The mere fact that two parties may "ascribe different meanings to the language does not mean the language is ambiguous." Kipp. v. Kipp., 844 So. 2d 691, 693 (Fla. 4th DCA 2003).

In construing terms appearing in insurance policies, the Court adopts the plain "meaning of the words contained in legal and non-legal dictionaries." Continental Cas. Co. v. Wendt, 205 F.3d 1258, 1263 (11th Cir. 2000); Watson v. Prudential Property & Cas. Co., 696 So. 2d 394, 396 (Fla. 3d DCA 1996). The "plain meaning" of the word "own" as listed in the Merriam Webster Online Dictionary 2010 is "To have or hold as property."[1] The "plain meaning" of the word "or" as listed in the Merriam Webster Online Dictionary 2010 is "used as a function word to indicate an alternative <coffee or tea> <sink or swim>, the equivalent or substitute character of two words or phrases <lessen or abate>, or approximation or uncertainty <in five or six days>."[2] These definitions are reasonable, and comport with the common usage of both terms. Therefore, the Court concludes that the terms "own" and "or" are not ambiguous. See Nateman v. Hartford Cas. Ins. Co., 544 So.

---

[1] http://www.merriam-webster.com/dictionary/own. Notably, the term "own" is not defined to exclude joint ownership.

[2] http://www.merriam-webster.com/dictionary/or?show=1&t=1284499509

2d 1026, 1028 (Fla. 3d DCA 1989) ("When a policy provision remains undefined, common everyday usage determines its meaning.").

Although the Defendants also cite to the Merriam Webster Online Dictionary definitions in their motion, they argue that the Hired Auto and Non-Owned Auto Liability Coverage provision (and in particular the use of the terms "own" and "or") could still reasonably be interpreted to the facts of this case in two ways: (1) that the auto involved in the January 28, 2008 accident was owned by Rock Solid and deny coverage; or (2) that the auto was owned by Disilvio and provide coverage (Doc. 10, pp. 3-4). In making this argument, the Defendants focus on the wrong document. The ambiguity which would result in these two interpretations does not exist within the Policy itself – either as written or as applied. Rather, the alleged "ambiguity" exists in the use of the word "or" in the Certificate of Title from the State of Florida for the vehicle in question. In other words, the interpretation of the meaning of the word "or" in the Certificate of Title will determine who the owner of the vehicle is, which in turn will determine whether the Policy provides coverage under the plain meaning of the Policy's terms.

To determine what the term "or" means in the Certificate of Title, the Court must look to Florida law. Florida Statute § 319.22, entitled "Transfer of title," discusses the nature of the ownership of an automobile by more than one person:

> When a motor vehicle or mobile home is registered in the names of two or more persons as coowners in the alternative by the use of the word "or," such vehicle shall be held in joint tenancy. Each coowner shall be deemed to have granted to the other coowner the absolute right to dispose of the title and interest in the vehicle

> or mobile home, and the signature of any coowner shall constitute proper endorsement. Upon the death of a coowner, the interest of the decedent shall pass to the survivor as though title or interest in the vehicle or mobile home was held in joint tenancy. This provision shall apply even if the coowners are husband and wife.

Fla. Stat. § 319.22(2)(a)1.a. See also Smith v. Hindery, 454 So. 2d 663, 663-64 (Fla. 1st DCA 1984) (noting that Fla. Stat. § 319.22(2) was amended effective January 1, 1980 "to provide that the use of the disjunctive 'or' in a motor vehicle certificate of title or registration shall create a joint tenancy with each named owner having the absolute right to dispose of the title and interest in the vehicle upon signature endorsement of only one of them. . . ."); In re Daniels, 309 B.R. 54 (M.D. Fla. 2004) (Pursuant to Fla. Stat. § 319.22(2), "where 'or' separated multiple names on a car title, a joint tenancy results.").

The clear and unambiguous language of this statute establishes as a matter of law that where a Certificate of Title lists two or more owners with the word "or" each person is deemed an owner of the vehicle. Applying § 319.22(2)(a)1.a. to the facts of this case means that both Disilvio and Rock Solid are owners of the vehicle in question. This in turn means that Rock Solid – the Named Insured under the Policy – was the owner of the vehicle and, therefore, the Policy does not cover any damages resulting from the January 28, 2008 accident.

The Court also finds that the Policy does not provide coverage for another reason. The Policy's Hired Auto and Non-Owned Auto Liability Coverage provision excludes from coverage any autos for which there is other insurance available which affords the same or

similar coverage (Doc. 10, Ex. A, p. 10).  In this case, it is undisputed that the vehicle was insured by Progressive Auto Insurance, therefore there was other insurance available to cover the damages from the January 28, 2008 accident.  As such, no coverage under the Policy exists.

## **Conclusion**

Accordingly, upon due consideration, the Defendants/Counter-Plaintiffs' Motion for Summary Judgment on Defendants/Counter-Plaintiffs' Amended Counterclaim (Doc. 10) is DENIED.  The Clerk is directed to enter judgment in favor of Plaintiff Auto-Owner Insurance Company and against Defendants Beverly Habbert, individually and as Personal Representative of the Estate of George Habbert, John Robert Disilvio and Rock Solid Framing, Inc. as to all claims set forth in the Complaint and Amended Counterclaim declaring as follows:

(1)   There is no insurance coverage under the Commercial General Liability Policy, policy number 78633766-07, for the January 28, 2008 auto accident;

(2)   There is no coverage under the Policy for the January 28, 2008 auto accident for John Robert Disilvio and/or Rock Solid Framing, Inc.;

(3)   There is no coverage under the Policy for the January 28, 2008 auto accident for the benefit of Beverly Habbert, individually and/or as Personal Representative of the Estate of George Habbert; and

(4)  Auto-Owners has no duty or obligation to pay any amounts agreed to by settlement agreement, Coblenz Agreement, Stipulated Judgment, and/or any other type of agreement entered into by or between John Robert Disilvio and/or Rock Solid Framing, Inc., and/or Beverly Habbert for the claims arising out of the January 28, 2008 auto accident.

Within fourteen (14) days from the date of this Order, Auto-Owners may file a motion for attorney's fees and costs.  The Defendants shall file a response to the motion within fourteen (14) days of service.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 24th day of September, 2010.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record